NO. 07-01-0414-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



FEBRUARY 13, 2003


______________________________



BILLY WILLIAMS
,




 Appellant


v.



THE STATE OF TEXAS, 




 Appellee

_________________________________



FROM THE 339TH DISTRICT COURT OF HARRIS COUNTY;



NO. 872,483; HON. CAPRICE COSPER, PRESIDING


_______________________________



Before QUINN and REAVIS, J.J. and BOYD, S.J. (1)*

 Billy Williams (appellant) appeals his conviction for aggravated sexual assault of a
child. Via five issues, he questions the effectiveness of his trial counsel, the purported
denial of his rights to due process and confrontation, the definition of reasonable doubt
purportedly uttered during voir dire, and the trial court's refusal to grant him a new trial due
to a supposed misstatement of the law also made during voir dire. We affirm.




Issues One and Two: Ineffective Assistance of Counsel


 Through his first two issues, appellant contends that his counsel was ineffective in
numerous ways. We overrule the issues for the following reasons. (2)

 As to the contention that counsel was ineffective because he did not challenge a
potential juror for cause, we note that the Court of Criminal Appeals held that such an
omission may be based upon sound trial strategy. Delrio v. State, 840 S.W.2d 443, 445-46
(Tex. Crim. App. 1992). Absent from the record at bar is evidence of the reasons, if any,
for counsel's silence. It may well be that he said nothing because the trial court
rehabilitated the venire member, as appellant himself acknowledged later in his appellate
brief. Indeed, the record indicates that the court did just that. And, given that counsel
need not object simply to object, White v. State, 999 S.W.2d 895, 899-90 (Tex. App.-
Amarillo 1999, pet. ref'd.), his silence may have legitimate basis. In short, the claim of
appellant is not firmly founded in the record; nor does the record rebut the presumption that
counsel acted upon sound trial strategy.

 Next, appellant alleges that counsel was ineffective for using peremptory strikes,
instead of challenges for cause, to remove potential jurors from the venire. Yet, the record
before us indicates that the venire members in question, i.e. numbers 1, 16, 17, and 20,
were removed for cause by agreement with the State, not through the use of peremptory
challenges. Thus, this particular allegation of misconduct is not firmly founded on the
record.

 As to the allegation that counsel was ineffective because he appeared disoriented
at times, no explanation or analysis accompanies the issue. See Tex. R. App. P. 38.1(h)
(requiring the appellant to present clear and concise argument). Nor does appellant cite
any authority to support his apparent conclusion that occasional instances of confusion
experienced by one's attorney evinces ineffectiveness. (3) Id. (requiring appellant to cite
relevant authority supporting his contentions). Having failed to provide us with analysis and
citation to legal authority, appellant waived his complaint. Beal v. State, 35 S.W.3d 677,
682 (Tex. App.-Houston [1st Dist.] 2000, no pet.) (holding that the appellant waived his
claim of ineffective assistance by failing to accompany the allegations with citation to legal
authority and explanation of his point); see Rocha v. State, 16 S.W.3d 1, 20 (Tex. Crim.
App. 2000) (holding that the issue was waived because appellant failed to cite relevant
authority or explain his contentions). 

 As to the allegation that counsel "failed to object to the trial court's comments on the
weight of the evidence," we again find no citation to any authority suggesting that the
statements were comments on the weight of the evidence. Nor did appellant explain why
he believed them to be so or how they prejudiced him. So, this contention was also
waived. 

 The same is true of the allegations that counsel insufficiently prepared for trial,
introduced evidence of extraneous offenses, and failed to pursue an affirmative defense. (4) 
 In each instance, appellant simply concluded that error occurred without explaining why
it constituted error or citing authority for the proposition. Consequently, these complaints
also fail to present anything for review.

 As to the allegation that counsel was ineffective because he uttered no objection "to
misstated law on jury unanimity," appellant failed to explain, much less establish by a
preponderance of the evidence, how this prejudiced him. The purported error consisted
of the trial court telling the jury (during voir dire) that it need not be unanimous in deciding
how appellant committed the assault upon the young boy given that the State alleged two
ways in which it could have been committed. Then, it informed the jurors that they need
only be unanimous in deciding that the assault occurred. Yet, while undergoing
examination on the witness stand in open court and before the jury, appellant readily
confessed to acts which constituted one way in which the State alleged he assaulted the
young boy. Appellant having openly confessed to committing the assault for all practical
purposes, we cannot see how "'but for his counsel's [supposed] unprofessional error[], the
result of the proceeding would have been different.'" Bone v. State, 77 S.W.3d 828, 833
(Tex. Crim. App. 2002). Nor does appellant deign to explain otherwise.

 As to the allegation that counsel failed to proffer a valid reason for the line of
questioning he pursued, we note that the evidence he apparently sought to develop
consisted of hearsay uttered by the victim. This hearsay consisted of the young boy having
previously engaged in sexual activity with others in exchange for compensation. How
admission of this evidence would have benefitted appellant goes unexplained, save for the
statement that it would have provided the jurors with "a complete picture of what occurred." 
How it was relevant to any material fact in issue is equally unexplained, save for the mere
conclusion that the evidence "had a tendency to make the existence of facts consequential
to a determination of the action more probable than it would have been without the
evidence." Simply put, that the 12 year old boy may have previously engaged in sexual
activity for pay with others does not somehow give appellant (an adult male) license to do
it without risk of prosecution. At the very least, appellant has cited to no authority
illustrating otherwise. Thus, he again failed to establish, by a preponderance of the
evidence, both unprofessional conduct and harm. 

 As to the allegation that counsel was ineffective because he failed to object to the
testimony of Donna Lacy, we note that the record does not contain evidence illustrating
why counsel omitted to do so. Because his silence could have been part of a legitimate
trial tactic, the contention that counsel was less than reasonable or professional is not
firmly founded in the record. See Thompson v. State, 9 S.W.3d 808, 814 (Tex. Crim. App.
1999) (holding that because the record failed to illustrate why counsel did not object to the
allegedly inadmissible testimony, appellant failed to rebut the presumption that counsel
was effective). We also note the absence of any allegation that the exclusion of this
witness's testimony would have probably resulted in a different outcome. Again, appellant
had the burden to illustrate that. Having failed in that regard, he did not carry his burden. (5) 

 As to the allegation that counsel was ineffective because he did not object to the
State's non-compliance with article 38.072 of the Texas Code of Criminal Procedure, we
note the absence of evidence explaining the motives, if any, for counsel's omission. Again,
he may well have had a legitimate trial strategy for doing so. Thus, we cannot say that the
allegation of unprofessionalism is firmly founded in the record. Thompson v. State, supra. 
Moreover, the evidence at issue was also admitted through the testimony of the
complaining witness, and appellant does not suggest that his attorney acted deficiently
when that occurred. Thus, we hesitate to find counsel's performance unreasonable for
omitting to object to evidence which was admitted elsewhere through means about which
appellant does not complain.

 As to the allegation that counsel was ineffective because the trial court said (during
voir dire) one may choose not to testify because he is guilty, appellant suggests that the
utterance was tantamount to a comment upon an accused's failure to testify. Yet, here,
appellant actually testified. Appellant having testified, the jury could hardly have been
swayed by the court's comment and inferred that he was guilty because he did not testify. 
Nor can one reasonably say, under those circumstances, that the utterance evinced an
improper comment upon his right to remain silent; he did not remain silent. Finally, when
viewed in its entire context, the utterance at issue was simply one of several examples
used by the trial court to dissuade the venire members from considering, in any way, an
accused's invocation of his right to remain silent. Given this context, defense counsel may
have had justifiable reason to remain silent when the utterance was made. In short,
appellant has again failed to rebut the presumption that his attorney was effective. 
Thompson v. State, supra.

Issue Three - Deprivation of Right to Due Process and of Confrontation


 In his third issue, appellant contends that he was denied due process and his right
to confrontation when the State attempted to admit hearsay without complying with the
outcry statute, i.e. Texas Code of Criminal Procedure art. 38.072, §2(b). We overrule the
issue.

 Appellant did not object to the evidence when it was offered or admitted. Thus, he
waived his complaint. Cates v. State, 72 S.W.3d 681, 699 (Tex. App.-Tyler 2001, pet.
ref'd.) (holding that the appellant waived his allegation regarding compliance with art.
38.072, §2(b) by failing to object). Indeed, the Court of Criminal Appeals implicitly found,
in Lankston v. State, 827 S.W.2d 907 (Tex. Crim. App. 1992) (regarding the failure to
comply with the hearing requirement expressed in art. 38.072, §2(b)), that a
contemporaneous objection was necessary to preserve the issue. Had a
contemporaneous objection been unnecessary, then the court would not have needed to
discuss, at length, whether the objection uttered was sufficient to preserve the issue for
review. Id. at 909-10. Because it went through the exercise, however, one can reasonably
deduce from the opinion that an objection was needed. 

 Issue Four - Definition of Reasonable Doubt


 In his fourth issue, appellant contends that the trial court erred by overruling
counsel's objection to the State's definition of reasonable doubt. We overrule the issue.

 The purported reference occurred during voir dire and consists of the following
exchange: 

 [Prosecutor]: All right. The Judge also mentioned to you that I have to prove these
things beyond a reasonable doubt. Unfortunately, you're not given a definition of
reasonable doubt. But I'll suggest to you it's basically your common sense, what
you believe - - 


 [Defense Counsel]: Your Honor, I'm going to object to the State defining reasonable
doubt.


 Court: Overruled. She gave her opinion. You'll be allowed to give your opinion, Mr.
Smith. Ultimately, it's left up to the individual. It's not proof beyond all doubt, but
it is proof beyond a reasonable doubt.


 [Prosecutor]: And I would suggest that you rely on your common sense to define for
yourself what beyond a reasonable doubt is. . . . 


As can be seen, the prosecutor did not purport to define reasonable doubt. She merely
suggested that the jurors use "common sense" in doing so themselves. Moreover,
appellant does not complain of the trial court's statement that reasonable doubt does not
require "proof beyond all doubt." Given these circumstances, the trial court's statement
that the comment was simply the prosecutor's opinion, the trial court's decision to grant
appellant opportunity to voice his own opinion, the failure of appellant to cite any authority
supporting the proposition that the jurors cannot use "common sense" when considering
the evidence, and our refusal to preclude the jurors from exercising "common sense," we
find no error.


Issue Five - Denial of Motion for New Trial


 In his final issue, appellant contends that the trial court erred by failing to grant him
a new trial. This is allegedly so because the trial court and the State misled the jury when
stating that it could find appellant guilty even if the individual jurors did not unanimously
agree as to how he committed the crime. We overrule the issue.

 The comments referred to occurred during voir dire. However, appellant did not
object to them when made. Instead, he waited until after trial was completed and judgment
was entered. At that time he moved for a new trial, contending, among other things, that
the "court . . . misdirected the jury as to the law." At what point in the proceeding the trial
court allegedly "misdirected the jury as to the law" went unmentioned. Furthermore, a
hearing was not held on the motion. Given the absence of a contemporaneous objection,
as contemplated by Texas Rule of Appellate Procedure 33.1(a), the complaint was waived. 
Penry v. State, 903 S.W.2d 715, 741 (Tex. Crim. App.) cert. denied 516 U.S. 977, 116
S.Ct. 480, 133 L.Ed.2d 408, (1995) (holding that the appellant's complaint about the
prosecution's statements during voir dire were waived because the appellant did not object
to them at the time). Furthermore, his attempt to cure the default via a motion for new trial
did not do so. Hardeman v. State, 1 S.W.3d 689, 690 (Tex. Crim. App. 1999) (involving
the presentation of evidence at the punishment phase of the trial and holding that if
opportunity to object was afforded the appellant and he failed to do so, he cannot use a
later motion for new trial to preserve the error). This seems especially so when the
utterance contained in the motion was conclusory, non-specific, and sans any reference
to the prosecutor's statement. 

 Accordingly, we affirm the judgment of the trial court.

 

 Brian Quinn

 Justice


Do not publish.


 


 


 

 

 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code
Ann. §75.002(a)(1) (Vernon Supp. 2003). 
2. The standard of review applicable to claims of ineffective assistance is reiterated in Bone v. State,
77 S.W.3d 828 (Tex. Crim. App. 2002). We refer the litigants to it for an explanation of same. Furthermore,
not only must the claim be firmly founded in the record, Thompson v. State, 9 S.W.3d 808, 813-14 (Tex. Crim.
App. 1999), Rios v. State, 990 S.W.2d 382, 385 (Tex. App.--Amarillo 1999, no pet.), but counsel also is
entitled to a presumption that his actions were both reasonable and professional until the appellant establishes
otherwise. Bone v. State, 77 S.W.3d at 833.
3. If occasional instances of confusion ipso facto establish incompetence, then God save us all.
4. With regard to the matter of the affirmative defense, we are at a loss to understand how the act of
the 12 year old complainant in placing his mouth on the appellant's penis constituted an affirmative defense
to the charge that appellant committed aggravated assault by placing his penis in the boy's mouth. That is
what appellant contends and that surely needed explanation and analysis.
5. Indeed, this omission is present with respect to most every allegation of defective conduct mentioned
by appellant. And, rather than address that element of Bone in relation to each purported instance of
unprofessionalism, appellant simply concludes that he suffered "extreme prejudice to [his] defense" when the
errors are viewed in their totality. Yet, merely alleging that one suffered "extreme prejudice" is not a substitute
for establishing, through argument, explanation, analysis, and authority that the result would probably have
been different but for counsel's actions. This seems especially appropo when appellant himself confessed,
in open court, to committing the crime for which he was convicted. 



o-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:3;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;}
h4
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 4 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:4;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-style:italic;}
h5
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 5 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:5;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 mso-bidi-language:EN-US;
 font-weight:normal;}
h6
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 6 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:6;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 mso-bidi-language:EN-US;
 font-weight:normal;
 font-style:italic;}
p.MsoHeading7, li.MsoHeading7, div.MsoHeading7
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 7 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:7;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoHeading8, li.MsoHeading8, div.MsoHeading8
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 8 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:8;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;}
p.MsoHeading9, li.MsoHeading9, div.MsoHeading9
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 9 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:9;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoFootnoteText, li.MsoFootnoteText, div.MsoFootnoteText
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Calibri","sans-serif";
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoHeader, li.MsoHeader, div.MsoHeader
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Header Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoCaption, li.MsoCaption, div.MsoCaption
 {mso-style-noshow:yes;
 mso-style-priority:35;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 mso-pagination:widow-orphan;
 font-size:9.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.MsoFootnoteReference
 {mso-style-noshow:yes;
 mso-style-priority:99;
 vertical-align:super;}
p.MsoTitle, li.MsoTitle, div.MsoTitle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpFirst, li.MsoTitleCxSpFirst, div.MsoTitleCxSpFirst
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpMiddle, li.MsoTitleCxSpMiddle, div.MsoTitleCxSpMiddle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpLast, li.MsoTitleCxSpLast, div.MsoTitleCxSpLast
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoSubtitle, li.MsoSubtitle, div.MsoSubtitle
 {mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Subtitle Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 mso-bidi-language:EN-US;
 font-style:italic;}
a:link, span.MsoHyperlink
 {mso-style-noshow:yes;
 mso-style-priority:99;
 color:blue;
 text-decoration:underline;
 text-underline:single;}
a:visited, span.MsoHyperlinkFollowed
 {mso-style-noshow:yes;
 mso-style-priority:99;
 color:purple;
 mso-themecolor:followedhyperlink;
 text-decoration:underline;
 text-underline:single;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoNoSpacing, li.MsoNoSpacing, div.MsoNoSpacing
 {mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraph, li.MsoListParagraph, div.MsoListParagraph
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpFirst, li.MsoListParagraphCxSpFirst, div.MsoListParagraphCxSpFirst
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpMiddle, li.MsoListParagraphCxSpMiddle, div.MsoListParagraphCxSpMiddle
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpLast, li.MsoListParagraphCxSpLast, div.MsoListParagraphCxSpLast
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoQuote, li.MsoQuote, div.MsoQuote
 {mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Quote Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:black;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoIntenseQuote, li.MsoIntenseQuote, div.MsoIntenseQuote
 {mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Intense Quote Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:.65in;
 margin-bottom:14.0pt;
 margin-left:.65in;
 line-height:115%;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD .5pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleEmphasis
 {mso-style-priority:19;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:gray;
 font-style:italic;}
span.MsoIntenseEmphasis
 {mso-style-priority:21;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleReference
 {mso-style-priority:31;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 text-decoration:underline;
 text-underline:single;}
span.MsoIntenseReference
 {mso-style-priority:32;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 letter-spacing:.25pt;
 font-weight:bold;
 text-decoration:underline;
 text-underline:single;}
span.MsoBookTitle
 {mso-style-priority:33;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 letter-spacing:.25pt;
 font-weight:bold;}
p.MsoTocHeading, li.MsoTocHeading, div.MsoTocHeading
 {mso-style-noshow:yes;
 mso-style-priority:39;
 mso-style-qformat:yes;
 mso-style-parent:"Heading 1";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.Heading1Char
 {mso-style-name:"Heading 1 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 1";
 mso-ansi-font-size:14.0pt;
 mso-bidi-font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 font-weight:bold;}
span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 font-family:"Calibri","sans-serif";
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
span.SpellE
 {mso-style-name:"";
 mso-spl-e:yes;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:10.0pt;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-09-0357.CR%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-09-0357.CR%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-09-0357.CR%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-09-0357.CR%20opinion_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-09-0357.CR%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
-->








NO. 07-09-00357-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL D

 



APRIL
12, 2011

 



 

KIMBERLY YVETTE GARCIA, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 64TH DISTRICT COURT OF HALE
COUNTY;

 

NO. A17437-0711; HONORABLE ROBERT W. KINKAID JR., JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and PIRTLE, JJ.

 

 

MEMORANDUM OPINION

 

Appellant Kimberly Yvette Garcia
appeals from the trial courts revocation of her deferred adjudication
community supervision, finding her guilty of forgery of a financial instrument and sentencing her to eighteen months
in a state jail facility. Through two issues, appellant contends the trial
court erred in ordering her to pay $500 in attorneys fees.   We will modify the trial courts judgment,
and affirm it as modified.

Background

            In
March 2008, appellant plead guilty to forgery of a financial instrument.  As part of a plea agreement, the court
deferred a finding of guilt and placed appellant on community supervision.  Appellants deferred adjudication was
conditioned on her compliance with specified terms and conditions.  In June 2009, the State filed its second motion to proceed to an adjudication
of guilt.  At the hearing on this motion,
appellant plead true to each of the States allegations and entered a written
stipulation of the evidence. She also testified to several reasons why she did
not comply with the terms of her community supervision.  Her community supervision officer also
testified, outlining appellants failures to comply. 

Based
on appellants plea of true and the testimony presented, the trial court
revoked appellants community supervision, entered a finding of guilt and
sentenced appellant to eighteen months of confinement in a state jail facility.  The court also imposed court costs of
$281.00, restitution in the amount of $3,444.50, and attorneys fees repayment
in the amount of $500.00.  The record
also contains an order entitled TDCJ Inmate Trust Fund Withdrawal Order
directing the inmate trust fund supervisor to withdraw money from appellants
account for payment of an amount that included the court-appointed attorneys
fees.

Analysis

            By her two appellate issues,
appellant challenges both the provision in the courts judgment requiring her
to pay $500 in attorneys fees, and the withdrawal order directing withdrawal
of funds from her inmate account for that purpose.

In order
to assess attorney's fees, the trial court must first determine that the
defendant has financial resources that enable her to offset in part or in whole
the cost of the legal services provided. 
Tex. Code Crim.
Proc. Ann. art. 26.05(g) (West 2009).  And the record must reflect some factual
basis to support the determination that the defendant is capable of paying
attorney's fees.  Barrera v. State, 291 S.W.3d 515, 518 (Tex.
App.--Amarillo 2009, no pet.) (per curiam); Perez v. State, 280 S.W.3d 886, 887 (Tex.
App--Amarillo 2009, no pet.).  

In
appellants appeal in a companion case, we modified the courts judgment to
delete the requirement she pay attorneys fees. 
Garcia v. State,
No. 07-09-00356-CR, 2010 Tex.App. LEXIS 7179 (Tex.App.Amarillo Aug. 31,
2010, no pet.) (mem. op.,
not designated for publication).  Also,
although the trial courts judgment in this case contains a provision expressly
ordering appellant to repay attorneys fees to Hale County in the amount of
$500, it does not contain a finding she had financial resources enabling her to
pay all or any part of the fees paid her court-appointed counsel.  Cf. Marquez v. State, No. 07-10-00366-CR, 2011 Tex.App.
LEXIS 2307 (Tex.App.Amarillo March
30, 2011, no pet. h.) (mem. op., not
designated for publication) (courts judgment
contained a special finding defendant financially able to pay appointed
attorneys fees).  Nor does such a
determination appear elsewhere in the record. 
Accordingly, we conclude the order to pay attorneys fees was
improper.  Mayer v. State, 309 S.W.3d 552 (Tex.Crim.App. 2010). 
We find the same is true of the portion of the order relating to
attorneys fees in the TDCJ Inmate Trust Fund Withdrawal Order. 

Accordingly, we modify the trial courts judgment by deleting the
language ordering appellant to repay attorneys fees in the amount of
$500.00.  Id.; see also Anderson v. State, No. 03-09-00630-CR, 2010 Tex.App. LEXIS 5033, *9 (Tex.App-Austin, July 1, 2010, no pet.) (modifying judgment to delete order to pay attorneys
fees).  We also modify the TDCJ Inmate Trust Fund Withdrawal
Order[1] to
remove the $500.00 in attorneys fees from the total amount to be withdrawn
from appellants inmate account.  See Reyes v. State, 324 S.W.3d 865 (Tex.App.Amarillo 2010, no pet.) (modifying
an inmate withdrawal order); Webb
v. State, 324 S.W.3d 229 (Tex.App.Amarillo 2010,
no pet.) (addressing inmate withdrawal orders).  As modified, we affirm the judgment of the
trial court.

 

                                                                                                James
T. Campbell

                                                                                                            Justice

 

Do
not publish.

 











[1] As
we noted in Williams v. State, Nos.
07-10-0091-CV, 07-10-0100-CV, 07-10-0101-CV, 2011 Tex.App.
LEXIS 497, *3-4 n.2 (Tex.App.Amarillo
Jan. 25, 2011, no pet.) (mem. op.), these
documents are not orders in the traditional sense.  The controlling statute, Tex. Govt Code Ann. § 501.014(e) (West Supp. 2010), describes
the process as a notification by a court directing prison officials to
withdraw sums from an inmates account for the payment of any amount the
inmate is ordered to pay by order of the court.  Tex. Govt Code
Ann. § 501.014(e)(1)-(6) (West Supp. 2010); Harrell v. State, 286 S.W.3d 315, 316
n.1 (Tex. 2009).